In the Matter of the Estate of FREDERICK E. HOLLWEG, Also Known as FRED E. HOLLWEG, Deceased. VIRGINIA A. TURNER, Appellant; ANTHONY LEONE et al., Respondents.—In a proceeding to judicially settle an account, Virginia Turner, the residuary legatee, appeals from so much of a decree of the Surrogate's Court, Queens County, dated April 26, 1978, as (1) declared that joint assets which the decedent held in three Mexican banks, passed upon his death to the joint tenants, (2) declared that a joint bank account held by decedent and Clara Moersch in the Seamen's Bank for Savings passed to Ms. Moersch upon his death, and (3) approved a $1,750 fee to Edwin M. Singer, Esq., to be paid by the estate. Decree modified, on the law and the facts, by deleting therefrom the provision which declared that the joint assets in the Mexican banks passed to the joint tenants and substituting therefor a provision that the decedent's Mexican assets, claimed by Anthony Leone and Clara K. Moersch, are declared to be the assets of the estate. As so modified, decree affirmed insofar as appealed from, with one bill of costs to appellant payable jointly by respondents Leone and Moersch. Although objection two is not sustained, it merits some discussion. This objection relates to the account which decedent held in the Seamen's Bank for Savings in New York. The account bore the title: "Fred E. Hollweg Clara K. Moersch Payable to either or survivor". Since the account was in statutory form, section 675 of the Banking Law applies to it and provides that there is a presumption that the account was held by Ms. Moersch and Hollweg as joint tenants. However, this presumption can be rebutted by competent evidence indicating that the account was created merely for the convenience of the decedent. The record reveals that the

decedent, Fred Hollweg, was a salesman who traveled extensively throughout Mexico and the United States in the course of his work. He had met Clara Moersch about 40 years before his death when Ms. Moersch was an employee of the Chase Manhattan Bank. Ms. Moersch testified at trial that she handled most of the decedent's bank accounts in New York, sold any of his bonds upon request, obtained credit for him, and generally handled all of his finances. Apparently, Hollweg's travel made it difficult for him to manage his money and, therefore, the joint account in the Seamen's Bank was established. Clara Moersch made approximately 12 withdrawals from the joint account during the decedent's lifetime, and in each instance she promptly deposited the money in Hollweg's checking account at the Chase Manhattan Bank. Never did Ms. Moersch withdraw any of the money for her own use during Hollweg's lifetime. Thus there was substantial evidence that the joint account was opened for Hollweg's convenience. However, this evidence, though it rebuts the statutory presumption, did not preclude Ms. Moersch from proving that at some point, Hollweg intended a joint tenancy. Ms. Moersch testified that Hollweg had told her that the money was to be hers upon his death and that she could make use of the money during his lifetime. Ms. Moersch was a very credible witness. There was no testimony to controvert her account of the transaction with Hollweg (see *Hull v Littauer,* 162 NY 569). Thus the evidence supports the Surrogate's conclusion that a joint account was established. As for the Mexican assets, New York law governs their disposition, because New York is the only jurisdiction with a significant interest in the controversy *(Matter of Crichton,* 20 NY2d 124; *Matter of Syroczynski,* 85 Misc 2d 57). Section 675 of the Banking Law, which creates a presumption of joint tenancy when joint accounts are maintained in statutory form, does not apply to the Mexican assets for two reasons: (1) none of the Mexican banks does business in New York State; and (2) the accounts were not maintained in statutory form. Accordingly, these accounts are governed by New York's common law. At common law the mere establishment of a joint account did not carry with it a presumption of joint tenancy unless words of survivorship were used (see 9A Rohan, NY Civ Prac, EPTL, par 6-2.2 [20] [a]; Comment, 11 Cornell L. Q. 525, 526; see, also, *Matter of Bolin,* 136 NY 177). None of the accounts in Mexico was held in a form containing words of survivorship. Therefore no joint tenancy was created. Suozzi, J. P., O'Connor, Gulotta and Cohalan, JJ., concur.