OPINION OF THE COURT
Simons, J.
Plaintiff commenced this action seeking a declaration that he is the rightful owner of a painting which he alleges his father, now deceased, gave to him. He concedes that he has never had possession of the painting but asserts that his father made a valid gift of the title in 1963 reserving a life estate for himself. His father retained possession of the painting until he died in 1980. Defendant, plaintiff’s stepmother, has the painting now and has refused plaintiff’s requests that she turn it over to him. She contends that the purported gift was testamentary in nature and invalid insofar as the formalities of a will were not met or, alternatively, that a donor may not make a valid inter vivas gift of a chattel and retain a life estate with a complete right of possession. Following a seven-day nonjury trial, Special Term found that plaintiff had failed to establish any of the elements of an inter vivas gift and that in any event an attempt by a donor to retain a present possessory life estate in a chattel invalidated a purported gift of it. The Appellate Division held that a valid gift may be made reserving a life estate and, finding the elements of a gift established in this case, it reversed and remitted the matter for a determination of value (104 AD2d 171). That determination has now been made and defendant appeals directly to this court, pursuant to CPLR 5601 (d), from the subsequent final judgment entered in Supreme Court awarding plaintiff $2,500,000 in damages representing the value of the painting, plus interest. We now affirm.
The subject of the dispute is a work entitled "Schloss *52 Kammer am Attersee II” painted by a noted Austrian modernist, Gustav Klimt. It was purchased by plaintiffs father, Victor Gruen, in 1959 for $8,000. On April 1, 1963 the elder Gruen, a successful architect with offices and residences in both New York City and Los Angeles during most of the time involved in this action, wrote a letter to plaintiff, then an undergraduate student at Harvard, stating that he was giving him the Klimt painting for his birthday but that he wished to retain the possession of it for his lifetime. This letter is not in evidence, apparently because plaintiff destroyed it on instructions from his father. Two other letters were received, however, one dated May 22, 1963 and the other April 1, 1963. Both had been dictated by Victor Gruen and sent together to plaintiff on or about May 22, 1963. The letter dated May 22, 1963 reads as follows:
"Dear Michael:
"I wrote you at the time of your birthday about the gift of the painting by Klimt.
"Now my lawyer tells me that because of the existing tax laws, it was wrong to mention in that letter that I want to use the painting as long as I live. Though I still want to use it, this should not appear in the letter. I am enclosing, therefore, a new letter and I ask you to send the old one back to me so that it can be destroyed.
"I know this is all very silly, but the lawyer and our accountant insist that they must have in their possession copies of a letter which will serve the purpose of making it possible for you, once I die, to get this picture without having to pay inheritance taxes on it.
"Love,
"s/Victor”.
Enclosed with this letter was a substitute gift letter, dated April 1, 1963, which stated:
"Dear Michael:
"The 21st birthday, being an important event in life, should be celebrated accordingly. I therefore wish to give you as a present the oil painting by Gustav Klimt of Schloss Kammer which now hangs in the New York living room. You know that Lazette and I *53 bought it some 5 or 6 years ago, and you always told us how much you liked it.
"Happy birthday again.
"Love,
"s/Victor”.
Plaintiff never took possession of the painting nor did he seek to do so. Except for a brief period between 1964 and 1965 when it was on loan to art exhibits and when restoration work was performed on it, the painting remained in his father’s possession, moving with him from New York City to Beverly Hills and finally to Vienna, Austria, where Victor Gruen died on February 14, 1980. Following Victor’s death plaintiff requested possession of the Klimt painting and when defendant refused, he commenced this action.
The issues framed for appeal are whether a valid inter vivas gift of a chattel may be made where the donor has reserved a life estate in the chattel and the donee never has had physical possession of it before the donor’s death and, if it may, which factual findings on the elements of a valid inter vivas gift more nearly comport with the weight of the evidence in this case, those of Special Term or those of the Appellate Division. Resolution of the latter issue requires application of two general rules. First, to make a valid inter vivas gift there must exist the intent on the part of the donor to make a present transfer; delivery of the gift, either actual or constructive to the donee; and acceptance by the donee (Matter of Szabo, 10 NY2d 94, 98; Matter of Kelly, 285 NY 139,150 [dissenting in part opn]; Matter of Van Alstyne, 207 NY 298, 306; Beaver v Beaver, 117 NY 421, 428). Second, the proponent of a gift has the burden of proving each of these elements by clear and convincing evidence (Matter of Kelley, supra, at p 150; Matter of Abramowitz, 38 AD2d 387, 389-390, affd on opn 32 NY2d 654).
Donative Intent
There is an important distinction between the intent with which an inter vivas gift is made and the intent to make a gift by will. An inter vivas gift requires that the donor intend to make an irrevocable present transfer of ownership; if the intention is to make a testamentary disposition effective only after death, the gift is invalid unless made by will (see, McCarthy v Pieret, 281 NY 407, 409; Gannon v McGuire, 160 NY 476, 481; Martin v Funk, 75 NY 134, 137-138).
*54 Defendant contends that the trial court was correct in finding that Victor did not intend to transfer any present interest in the painting to plaintiff in 1963 but only expressed an intention that plaintiff was to get the painting upon his death. The evidence is all but conclusive, however, that Victor intended to transfer ownership of the painting to plaintiff in 1963 but to retain a life estate in it and that he did, therefore, effectively transfer a remainder interest in the painting to plaintiff at that time. Although the original letter was not in evidence, testimony of its contents was received along with the substitute gift letter and its covering letter dated May 22, 1963. The three letters should be considered together as a single instrument (see, Matter of Brandreth, 169 NY 437, 440) and when they are they unambiguously establish that Victor Gruen intended to make a present gift of title to the painting at that time. But there was other evidence for after 1963 Victor made several statements orally and in writing indicating that he had previously given plaintiff the painting and that plaintiff owned it. Victor Gruen retained possession of the property, insured it, allowed others to exhibit it and made necessary repairs to it but those acts are not inconsistent with his retention of a life estate. Furthermore, whatever probative value could be attached to his statement that he had bequeathed the painting to his heirs, made 16 years later when he prepared an export license application so that he could take the painting out of Austria, is negated by the overwhelming evidence that he intended a present transfer of title in 1963. Victor’s failure to file a gift tax return on the transaction was partially explained by allegedly erroneous legal advice he received, and while that omission sometimes may indicate that the donor had no intention of making a present gift, it does not necessarily do so and it is not dispositive in this case.
Defendant contends that even if a present gift was intended, Victor’s reservation of a lifetime interest in the painting defeated it. She relies on a statement from Young v Young (80 NY 422) that " '[a]ny gift of chattels which expressly reserves the use of the property to the donor for a certain period, or * * * as long as the donor shall live, is ineffectual’ ” (id., at p 436, quoting 2 Schouler, Personal Property, at 118). The statement was dictum, however, and the holding of the court was limited to a determination that an attempted gift of bonds in which the donor reserved the interest for life failed because there had been no delivery of the gift, either actual or con *55 structive (see, id., at p 434; see also, Speelman v Pascal, 10 NY2d 313, 319-320). The court expressly left undecided the question "whether a remainder in a chattel may be created and given by a donor by carving out a life estate for himself and transferring the remainder” (Young v Young, supra, at p 440). We answered part of that question in Matter of Brandreth (169 NY 437, 441-442, supra) when we held that "[in] this state a life estate and remainder can be created in a chattel or a fund the same as in real property”. The case did not require us to decide whether there could be a valid gift of the remainder.
Defendant recognizes that a valid inter vivas gift of a remainder interest can be made not only of real property but also of such intangibles as stocks and bonds. Indeed, several of the cases she cites so hold. That being so, it is difficult to perceive any legal basis for the distinction she urges which would permit gifts of remainder interests in those properties but not of remainder interests in chattels such as the Klimt painting here. The only reason suggested is that the gift of a chattel must include a present right to possession. The application of Brandreth to permit a gift of the remainder in this case, however, is consistent with the distinction, well recognized in the law of gifts as well as in real property law, between ownership and possession or enjoyment (see, Speelman v Pascal, 10 NY2d 313, 318, supra; McCarthy v Pieret, 281 NY 407, 409-411, supra; Matter of Brandreth, 169 NY 437, 442, supra). Insofar as some of our cases purport to require that the donor intend to transfer both title and possession immediately to have a valid inter vivas gift (see, Gannon v McGuire, 160 NY 476, 481, supra; Young v Young, 80 NY 422, 430, supra), they state the rule too broadly and confuse the effectiveness of a gift with the transfer of the possession of the subject of that gift. The correct test is " 'whether the maker intended the [gift] to have no effect until after the maker’s death, or whether he intended it to transfer some present interest’ ” (McCarthy v Pieret, 281 NY 407, 409, supra [emphasis added]; see also, 25 NY Jur, Gifts, § 14, at 156-157). As long as the evidence establishes an intent to make a present and irrevocable transfer of title or the right of ownership, there is a present transfer of some interest and the gift is effective immediately (see, Matter of Brady, 228 App Div 56, 60, affd no opn 254 NY 590; In re Sussman’s Estate, 125 NYS2d 584, 589-591, affd no opn 283 App Div 1051; Matter of Valentine, 122 Misc 486, 489; Brown, Personal Property § 48, at 133-136 [2d *56 ed]; 25 NY Jur, Gifts, § 30, at 173-174; see also, Farmers’ Loan & Trust Co. v Winthrop, 238 NY 477, 485-486). Thus, in Speelman v Pascal (supra), we held valid a gift of a percentage of the future royalties to the play "My Fair Lady” before the play even existed. There, as in this case, the donee received title or the right of ownership to some property immediately upon the making of the gift but possession or enjoyment of the subject of the gift was postponed to some future time.
Defendant suggests that allowing a donor to make a present gift of a remainder with the reservation of a life estate will lead courts to effectuate otherwise invalid testamentary dispositions of property. The two have entirely different characteristics, however, which make them distinguishable. Once the gift is made it is irrevocable and the donor is limited to the rights of a life tenant not an owner. Moreover, with the gift of a remainder title vests immediately in the donee and any possession is postponed until the donor’s death whereas under a will neither title nor possession vests immediately. Finally, the postponement of enjoyment of the gift is produced by the express terms of the gift not by the nature of the instrument as it is with a will (see, Robb v Washington & Jefferson Coll., 185 NY 485, 493).
Delivery
In order to have a valid inter vivas gift, there must be a delivery of the gift, either by a physical delivery of the subject of the gift or a constructive or symbolic delivery such as by an instrument of gift, sufficient to divest the donor of dominion and control over the property (see, Matter of Szabo, 10 NY2d 94, 98-99, supra; Speelman v Pascal, 10 NY2d 313, 318-320, supra; Beaver v Beaver, 117 NY 421, 428-429, supra; Matter of Cohn, 187 App Div 392, 395). As the statement of the rule suggests, the requirement of delivery is not rigid or inflexible, but is to be applied in light of its purpose to avoid mistakes by donors and fraudulent claims by donees (see, Matter of Van Alstyne, 207 NY 298, 308, supra; Matter of Cohn, supra, at pp 395-396; Mechem, Requirement of Delivery in Gifts of Chattels and of Choses in Actions Evidenced by Commercial Instruments, 21 111 L Rev 341, 348-349). Accordingly, what is sufficient to constitute delivery "must be tailored to suit the circumstances of the case” (Matter of Szabo, supra, at p 98). The rule requires that " '[t]he delivery necessary to consummate a gift must be as perfect as the nature of the property *57 and the circumstances and surroundings of the parties will reasonably permit’ ” (id.; Vincent v Rix, 248 NY 76, 83; Matter of Van Alstyne, supra, at p 309; see, Beaver v Beaver, supra, at p 428).
Defendant contends that when a tangible piece of personal property such as a painting is the subject of a gift, physical delivery of the painting itself is the best form of delivery and should be required. Here, of course, we have only delivery of Victor Gruen’s letters which serve as instruments of gift. Defendant’s statement of the rule as applied may be generally true, but it ignores the fact that what Victor Gruen gave plaintiff was not all rights to the Klimt painting, but only title to it with no right of possession until his death. Under these circumstances, it would be illogical for the law to require the donor to part with possession of the painting when that is exactly what he intends to retain.
Nor is there any reason to require a donor making a gift of a remainder interest in a chattel to physically deliver the chattel into the donee’s hands only to have the donee redeliver it to the donor. As the facts of this case demonstrate, such a requirement could impose practical burdens on the parties to the gift while serving the delivery requirement poorly. Thus, in order to accomplish this type of delivery the parties would have been required to travel to New York for the symbolic transfer and redelivery of the Klimt painting which was hanging on the wall of Victor Gruen’s Manhattan apartment. Defendant suggests that such a requirement would be stronger evidence of a completed gift, but in the absence of witnesses to the event or any written confirmation of the gift it would provide less protection against fraudulent claims than have the written instruments of gift delivered in this case.
Acceptance
Acceptance by the donee is essential to the validity of an inter vivas gift, but when a gift is of value to the donee, as it is here, the law will presume an acceptance on his part (Matter of Kelsey, 26 NY2d 792, affg on opn at 29 AD2d 450, 456; Beaver v Beaver, 117 NY 421, 429, supra). Plaintiff did not rely on this presumption alone but also presented clear and convincing proof of his acceptance of a remainder interest in the Klimt painting by evidence that he had made several contemporaneous statements acknowledging the gift to his *58 friends and associates, even showing some of them his father’s gift letter, and that he had retained both letters for over 17 years to verify the gift after his father died. Defendant relied exclusively on affidavits filed by plaintiff in a matrimonial action with his former wife, in which plaintiff failed to list his interest in the painting as an asset. These affidavits were made over 10 years after acceptance was complete and they do not even approach the evidence in Matter of Kelly (285 NY 139, 148-149 [dissenting in part opn], supra) where the donee, immediately upon delivery of a diamond ring, rejected it as "too flashy”. We agree with the Appellate Division that interpretation of the affidavit was too speculative to support a finding of rejection and overcome the substantial showing of acceptance by plaintiff.
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander, Titone and Hancock, Jr., concur.
Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.