Judgment, Supreme Court, New York County (Charles E. Ramos, J.), entered October 4, 2012, dismissing the complaint with prejudice pursuant to an order, same court and Justice, entered August 23, 2012, which, inter alia, granted defendants’ motion to dismiss the complaint with prejudice, unanimously affirmed, with costs.
The theory of the complaint is that in 1996, defendant A. Robert Towbin (the settlor) made a completed gift of the shares and proprietary lease interest appurtenant to his cooperative apartment to a grantor retained income trust (GRIT) of which plaintiff is the successor trustee. A GRIT is an estate planning device that allows a grantor to transfer ownership of an asset while retaining the income derived from or use of the property during the trust term. Flaintiff bases his claims upon an irrevocable GRIT agreement executed by the settlor, on April 23, 1996. The GRIT agreement recited the settlor’s intention to “transfer and deliver” the apartment to the trustees. The 15-year trust term set forth in the agreement expired on April 23, 2011. It is alleged in the complaint that the settlor executed a stock power and an assignment of the proprietary lease at the time he entered into the GRIT agreement.
The proprietary lease contains a lessor’s consent provision by which no assignment of the lease can be effective against the cooperative unless (1) a written assignment is approved by and delivered to the cooperative, (2) the assignee agrees, in a form approved by the cooperative, to be bound by the terms of the proprietary lease or executes a new lease at the cooperative’s request, and (3) there is approval of the assignment by the cooperative’s board or, absent the board’s approval, a vote of the owners of at least 65% of the cooperative’s outstanding shares. It is alleged in the complaint that the settlor did not “ef *608 fectuate the transfer of record of the Stock and the Assignment of the Lease, on the books and records of [the cooperative].” Nonetheless, the relief sought under the first cause of action was a judgment declaring that a gift of the settlor’s shares and lease interests was completed when he entered into the GRIT agreement on April 23, 1996. According to plaintiffs brief, the remaining causes of action, that include conversion of the shares and lease, are “premised on the fact that the gift of the Stock and Lease was complete in 1996.” The motion court correctly granted defendants’ motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), finding that documentary evidence and the facts alleged in the complaint demonstrated that there had not been a completed gift to the trust.
A valid gift requires a donor’s intent to make a present transfer, actual or constructive delivery of the gift to the donee and the donee’s acceptance (Gruen v Gruen, 68 NY2d 48, 53 [1986]). “[The] delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit” (id. at 56-57 [internal quotation marks and citations omitted]). An interest in a cooperative apartment is sui generis in property law and essentially consists of a right to possess reed property (Matter of Carmer, 71 NY2d 781, 784 [1988]). Plaintiff unpersuasively argues that the subject of the gift, i.e., the settlor’s interest in the cooperative apartment, was actually delivered upon the execution of the GRIT agreement and the accompanying documents. We note that, in support of the conversion cause of action, plaintiff alleged that defendants converted the stock and proprietary lease. “Conversion is the ‘unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner’s rights’ ” (State of New York v Seventh Regiment Fund, 98 NY2d 249, 259 [2002] [citations omitted]). In light of the complaint’s assertions and the elements of conversion, we infer that the settlor’s shares and proprietary lease were not delivered to the trust. Plaintiff argues however that the stock power and an acceptance of assignment and assumption of lease executed by the trustees sufficed for purposes of constructive or symbolic delivery of the settlor’s interest in the cooperative apartment. Here, plaintiff correctly cites Pell St. Nineteen Corp. v Yue Er Liu Mah (243 AD2d 121 [1st Dept 1998], lv denied 93 NY2d 808 [1999]) for the proposition that constructive or symbolic delivery as opposed to physical delivery of a stock certificate may suffice to transfer shares in a corporation (id. at 126). To be sufficient, however, a symbolic delivery must proceed to “a point of no return” (Matter of Szabo, 10 NY2d 94, 98 [1961]).
*609 We are persuaded by the bankruptcy court’s reasoning in In re Lefrak (215 BR 930 [Bankr SD NY 1998], affd 227 BR 222 [SD NY 1998]). The issue in Lefrak was whether the debtor’s interest in a cooperative apartment had been effectively transferred by virtue of the execution of an assignment of the proprietary lease and an acceptance and assumption agreement (id. at 933). The lease in Lefrak contained a lessor’s consent provision that is materially identical to the one before this Court (id. at 933). The court found that the debtor’s interest in the apartment had not been transferred prior to the bankruptcy because the shares had not been delivered to the transferee and “the Corporation [like the cooperative in this case] never recorded the transfer on its stock records” (id. at 936). As aptly noted by the Lefrak court, the point of no return had not been reached because the debtor could have transferred the shares and lease to a third party without the purported transferee’s knowledge or consent (id. at 938). In this case, as in Lefrak, a showing of the requisite surrender of dominion and control is lacking (id.; see also Matter of Szabo, 10 NY2d at 98). We have considered plaintiff’s remaining contentions and find them unavailing.
Concur—Tom, J.E, Friedman, DeGrasse, Feinman and Gische, JJ.